IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**NELDA ADKINS, JANEL SHOWERS,**
**MARLA SEESE, et al.,**

　　　　　　　　　　　　　　　　　　　　　　　Civ. No. 1:20-cv-00361-CL

　　　　　　　Plaintiffs,

　　　　v.　　　　　　　　　　　　　　　　　　**REPORT AND**
　　　　　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**

**CITY OF PHOENIX POLICE**
**DEPARTMENT, JEFFREY PRICE,**

　　　　　　　Defendants.

CLARKE, Magistrate Judge.

　　　　Plaintiffs Nelda Adkins, Janel Showers, Fred Richardson, Marla Seese, and Denise

Norris ("Plaintiffs") are the surviving heirs of Dennis Day. Plaintiffs bring this cause of action

against the Phoenix Police Department and Lieutenant Jeffrey Price for allegedly negligent

conduct while investigating Dennis Day's disappearance. This case comes before the Court on

Defendants' Motion to Dismiss (Def.'s Mot.) (#19). For the reasons discussed below, the Court

recommends that the motion to dismiss be GRANTED.

## BACKGROUND

Plaintiffs bring the following three claims against the City of Phoenix Police Department ("PPD") and Lieutenant Price ("Price"): 42 U.S.C. § 1983 claim for deprivation of civil rights, negligent investigation, and tortious interference with a corpse. Plaintiffs are the surviving heirs of Dennis Day ("Day"), the victim of alleged second-degree manslaughter and negligent homicide in the open Jackson County Circuit Court case no. 19CR44452, *State v. Burda.* As Day's only surviving heirs, Plaintiffs assert they fall under the statutory definition of crime victims and must be afforded the due process rights established by Oregon's Crime Victims Act ("OCVA"). Plaintiffs allege Price acted with reckless indifference and wanton disregard in his investigation of Day's disappearance, and implicates Price's employer at the time, the PPD.

On July 27, 2018, the PPD opened a missing person case for Day, with Price the officer in charge of the investigation. It appears that after Day was killed, his body was hidden under a pile of clothing in the front room of his home. Although Day was reported missing shortly thereafter, approximately seven months passed before his decomposed body was discovered in the front room of his home.

Plaintiffs learned of Day's disappearance in January 2019, nearly six months after the PPD commenced its investigation. Defendant Price allegedly informed Day's family that he had searched Day's house three times with a crew that included cadaver dogs and had fully investigated the disappearance without any leads. The Oregon State Police ("OSP") took over the case the following month in February 2019. The subsequent search of Day's home by OSP successfully located Day's significantly decayed body in the state described above. Plaintiffs contend Day sustained post-mortem skeletal fractures, indicating that Defendant Price or other PPD Officers may have walked across his corpse during searches of the home, yet somehow

failed to discover Day's remains. Shortly after the discovery by OSP, Jackson County Sheriffs arrested Daniel Burda ("Burda") in connection with Day's death. It seems Burda occasionally lived at Day's home around the time of the disappearance, and allegedly trespassed upon Day's property shortly before the missing persons investigation was initiated.

Plaintiffs assert that because Day' decomposed body was later discovered in the front room of his own home—despite having been searched three times—it necessarily follows that Defendants acted, or failed to act, with deliberate or reckless indifference not only to their professional duties, but to Day and his next of kin. Plaintiffs maintain Defendants' actions demonstrate they expended minimal effort to investigate Day's disappearance resulting in an extreme miscarriage of justice actionable under federal law.

Specifically, Day's family asserts Defendants' misconduct shocked the conscious and deprived them of their liberty rights as crime victims, their property rights as individuals entitled to determine the disposition of Day's remains, and that Defendants failed to carry out in good faith their professional investigative duties.

## STANDARD OF REVIEW

Defendants move to dismiss the First Amended Complaint ("FAC") (#11) pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1). It is a plaintiff's burden to demonstrate the legal basis of such claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007). Thus, to avoid dismissal under Fed. R. Civ. P. 12(b)(6), the plaintiff must "allege 'sufficient factual matter . . . to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."). A complaint must not be "so vague or

ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Further,

courts "are not required to accept legal conclusions cast in the form of factual allegations if those

conclusions cannot reasonably be drawn from the facts alleged." *Clegg* v. *Cult Awareness*

*Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The Ninth Circuit has distilled these pleading

requirements down to a two-pronged test for establishing entitlement to the presumption of truth:

(1) a complaint must contain sufficient allegations of underlying facts which give fair notice

sufficient to enable the opposing party to defend itself effectively; and (2) the factual allegations

to be taken as true must plausibly suggest entitlement to relief. *Levitt v. Yelp! Inc.*, 765 F.3d

1123, 1135 (9th Cir. 2014) (citations omitted).

## DISCUSSION

Plaintiffs bring action under 42 U.S.C. § 1983, and several additional state law claims.

Because the Section 1983 claim is the sole claim that potentially establishes subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1), it is this Court's initial focus. For the reasons

discussed below, however, this Court recommends Plaintiffs' Section 1983 claim be dismissed

for lack of a cognizable legal theory under Fed. R. Civ. P. 12(b)(6). The Court therefore lacks

subject matter jurisdiction over this matter and should decline to exercise supplemental

jurisdiction over the remaining state law claims. The allegations of police misconduct and facts

in this case are disturbing. Plaintiffs can pursue their claims in state court.

### I.    Plaintiffs' 42 U.S.C. § 1983 Claim Should Be Dismissed.

Plaintiffs contend their complaints are actionable under Section 1983 for deprivation of

constitutionally protected liberty and property interests in violation of their right to both

substantive and procedural due process under the Fourteenth Amendment. *See* FAC §§ 42-48.

"To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty, or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). To state a claim for deprivation of substantive due process rights specifically enforceable under Section 1983, a plaintiff must show: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (citation omitted). Similarly, to state a procedural due process claim under Section 1983, a plaintiff must establish "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983-84 (9th Cir. 2011) (citation omitted). Absent a showing that a deprivation of a constitutionally protected liberty or property interest has occurred, there can be no claim that procedural due process was violated in depriving the liberty or property right asserted. *Id.*

Plaintiff asserts that Defendants violated both Day's (and Plaintiffs') substantive and procedural due process rights protected by the Fourteenth Amendment. *See* Plaintiffs' Opposition to Defendants' FRCP 12 Motions to Dismiss ("Pl.'s Opp. Br.") 8 (#22). The thrust of Plaintiff's argument is that statutes under the Oregon Crime Victims Act ("OCVA"),[1] create a special status for crime victims with concomitant liberty and property rights, such that deprivation of those rights is actionable under Section 1983. *See* Ore. Const. Art. I, §§ 42, 43; ORS 147.405-421, 147.500-521.

---

[1] Chapter 147 of the Ore. Rev. Stat. ("ORS") is titled "Victims of Crime and Acts of Mass Destruction." ORS 147.405-421 fall under the heading of "Crime Victims' Rights," and is known as the "Crime Victims' Bill of Rights." *See* ORS 147.405. ORS 147.500-512 fall under the heading of "Effectuation of Crime Victims' Constitutional Rights." Plaintiffs cite to both ORS 147.417 and ORS 147.512 as components of the OCVA, and the Court adopts this shorthand for purposes of this Report and Recommendation.

## A. Due Process Liberty Right

Substantive Due Process protects "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . such that . . . justice would [not] exist if they were sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Accordingly, "[the] [s]ubstantive due process analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citations omitted). Although Section 1983 does not provide a cause of action for mere violations of state law,[2] state law may nevertheless serve as a basis for establishing a liberty right for purposes of a Section 1983 claim. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989). To establish a constitutionally protected liberty right based in state law, the law must contain two elements: (1) a "substantive predicates" setting forth standards to guide officials in their decision-making process regarding a matter directly relevant to the individual asserting the right, and (2) "explicitly mandatory language" which directs a specific outcome if the predicates are met. *Id.*

Plaintiffs argue that the Oregon Constitution and corresponding OCVA provisions establish protected substantive and procedural due process liberty rights meant to guide police officers in missing persons and criminal investigations. Specifically, Plaintiffs contend that Oregon Constitution includes substantive predicates and mandated outcomes which give rise to a protected liberty interest by virtue of Sections 42 and 43, which provide, "[e]very victim . . . shall have remedy by due course of law for violation of a right established."[3] Plaintiffs also contend that statutes under the OCVA establish liberty interests for crime victims (and next of kin) by virtue of substantive predicates and mandated outcomes in its statutory scheme. Defendants maintain that the victims' rights Plaintiffs assert are not cognizable under the United

---

[2] *See Sweaney v. Ada Cty.*, 119 F.3d 1385, 1391 (9th Cir. 1997).
[3] Ore. Const. Art. I, §§ 42(3)(a), 43(5)(a).

States Constitution or federal statute because the scope of the victims' rights asserted by the Oregon provisions are limited to criminal proceedings, to the exclusion of investigatory activities.

By their own terms, the relevant provisions of the Oregon Constitutions appear to limit the scope of any rights they establish to the commencement of criminal proceedings. For example, Section 42 is entitled, "[r]ights of victim[s] *in criminal prosecutions*," and Section 43, "[r]ights of victim and public to protection from the accused person *during criminal proceedings*." Ore. Const. Art. I, §§ 42, 43 (emphasis added). The texts of the provisions strongly suggest they are limited to establishing victims' rights in criminal proceedings, to the exclusion of investigatory stages of law enforcement. §§ 42(2) ("[t]his section applies to all criminal . . . proceedings pending or commenced . . . [n]othing in this section is intended to create any cause of action for compensation or damages"), 43(2) "[t]his section applies to proceedings pending or commenced . . . [n]othing in this section creates any cause of action for compensation or damages"). At least one court in this district has held that the provisions are so limited. *See, e.g.*, *Barnett v. E:Space Labs LLC*, no. 6:18-cv-00419-MC, 2018 WL 3364660, at *4 (D. Or. July 10, 2018) ("The Oregon Constitution provides for victims' right[s] during criminal prosecution[.]") (internal quotation marks omitted).

The OCVA statutes effectuating the victims' rights under the Oregon Constitution similarly reference a limited scope of victims' rights. For example, ORS 147.504(1) provides the following purpose: "[to] effectuate[s] the provisions of sections 42 and 43 . . . for violations that occur in criminal proceedings and do[es] not provide a remedy for a for violations that occur in any other proceeding." "Criminal proceeding" is defined as, "an action at law in which a person is alleged, or has been adjudicated, to have committed a crime for which there is a victim

and that is conducted in the trial court before or after sentencing or disposition." ORS

147.500(4). Contrary to Plaintiffs' assertion that the relevant statutes "do[] not define a starting

point at which a person becomes a crime victim" (Pl.'s Opp. Br. 11), "victim" is defined as, "any

person determined by the prosecuting attorney or the court to have suffered direct . . . harm as a

result of the crime alleged in the criminal proceeding." ORS 147.500(13); *see* Ore. Const. art. I

§§ 42(6)(c), 43(3)(a). Taken together, these provisions do not facially appear to contemplate

victims' rights arising prior to the initiation of criminal proceedings. Because Plaintiffs assert

constitutional deprivations that occurred prior to the commencement of criminal proceedings, it

is not clear how the misconduct alleged gives rise to a right cognizable under Oregon law, let

alone federal law.

Plaintiffs contend that regardless of the statutory limitations described above, the

provisions of the Oregon Constitution and laws should be interpreted as establishing victims'

rights which reach beyond the scope of criminal proceedings and extend to the investigatory

stages of law enforcement. Specifically, Plaintiffs maintain that provisions of the OCVA include

substantive predicates and mandated outcomes which describe a more expansive, federally

cognizable liberty interest. *See* Pl.'s Opp. Br. 10 ("the distinction [between pre- and post-

initiation of criminal proceedings] does not matter in the context of a § 1983 claim").

In support, Plaintiffs point the Court to *Dix v. Cnty. of Shasta*, 963 F.2d 1296 (9th Cir.

1992), where the relevant issue was whether the California Crime Victims' Act of 1992 created

constitutionally protected liberty or property interests for crime victims wishing to participate in

any sentencing proceedings of the person who committed the crime. *Dix*, 963 F.2d at 1298-

1301. The Ninth Circuit concluded that although one of the statutes at issue contained a

substantive predicate (a judge imposing a criminal sentence shall consider the statements of

victims), no protected liberty interest was established because the statute did not include language prescribing any particular outcome if the predicate was met (the victim's statements were in fact considered in imposing a sentence). *Id.* at 1300-01. In dicta, the *Dix* court explained by example that if the statute at issue *had* included a mandatory outcome if the predicate is met—there, "the judge must enhance the defendant's sentence by at least one year" if the victim's statements demonstrated the extreme effect of the crime or favored the maximum sentence—a substantive liberty interest would be established. *Id.* at 1300. However, because the statute at issue did not so provide, the dismissal of Dix's claim was affirmed. *Id.* at 1300-01.

Plaintiffs argue that in contrast to the statutes protecting victims' rights in plea deals at issue in *Dix,* parallel statutory protections under the OCVA "contain a number of substantive predicates with dictated outcomes." Pl.'s Opp. Br. 10. Plaintiffs provide the following example:

> If the court finds that the victim requested consultation regarding plea negotiations and that the prosecuting attorney failed to make reasonable efforts to consult the victim, the court shall direct the prosecuting attorney to make reasonable efforts to consult the victim and may not accept the plea unless the court makes a finding on the record that the interests of justice require the acceptance of the plea.

ORS 147.512(2)(c).

The language of ORS 147.512(2)(c) seems to include both a substantive predicate and a mandated outcome—generally, *if* the prosecutor failed to reasonably consult the victim regarding a plea deal, *then* the court may not accept the plea. So, following *Dix,* the statute could be read as creating a liberty interest for crime victims to be consulted in plea deal negotiations. Here, however, Plaintiffs are not asserting a liberty interest arising from ORS 147.512(2)(c)—in other words, it is not Plaintiffs contention that they were deprived of the opportunity to be consulted before any plea deal was offered to Day's assailant.

In any event, Plaintiffs seem to suggest that because one of the several statutes the OCVA encompasses gives rise to a liberty interest, the OCVA *in general* establishes a liberty interest that reaches beyond a victims' rights as to plea deals under ORS 147.512(2)(c). *See* Pl.'s Opp. Br. 11 ("Plaintiffs do have liberty rights established by the [OCVA]."). But even assuming for the sake of argument that ORS 147.512(2)(c) establishes a liberty interest regarding plea deals, it does not clearly establish a liberty interest regarding the investigatory misconduct alleged by Plaintiffs. *See Twombly*, 550 U.S. at 555 ([f]actual allegations must be enough to raise a right to relief above the speculative level") (citations omitted). In *Dix*, the statute at issue was directly applicable to the plaintiff's cause of action—it concerned victims' rights in plea deals. The hypothetical "fix" offered by the Ninth Circuit provided a mandated outcome, but the *Dix* court did not suggest or imply that the hypothetical statute would create a right extending to other provisions of the California statutory scheme. To the contrary, the *Dix* court determined that the hypothetical liberty interest would apply only to *part* of a single provision of the California Penal Code. *Dix*, 963 F.2d at 1300.

Plaintiffs' FAC references victims' liberty rights for next of kin, codified in ORS 147.417 et. seq. *See* FAC §§ 3, 45(a), (b), (d). Some provisions of the statute appear to correspond to the misconduct Plaintiffs allege. *See, e.g.*, ORS 147.417 (1) ("As soon as is reasonably practicable in a criminal action in which there is a victim, a law enforcement agency shall notify a person who reasonably appears to be a victim of the offense of the person's rights under section 42, Article I of the Oregon Constitution."). The text of ORS 147.417(1) arguably contemplates some substantive predicates relevant to Plaintiffs' claims, such as crime victims' rights to be "timely notif[ied]" of Day's disappearance, have Day's disappearance "adequately investigate[d]," to be "communicate[d] with . . . regarding the investigation," or play "[a]

meaningful role in the criminal justice system." *See* FAC § 45(a), (b), (f), (g). Nevertheless, consistent with the scope of ORS 147.500-550 discussed above, ORS 147.417 expressly limits its application to "a criminal action," which suggests that rights emanating from the statute do not apply to the misconduct Plaintiffs allege or a right Plaintiffs seek to enforce.

Moreover, even assuming ORS 147.417 creates a substantive predicate for a right of victim notification prior to a criminal proceeding, it lacks "explicitly mandatory language" specifying a necessary outcome. *Thompson*, 490 U.S. at 463. The only "outcomes" ORS 147.417 identifies are set forth in subsection (2): the failure to properly notify a victim as required "(a) [i]s not grounds for setting aside a conviction," and "(b) [d]oes not affect the validity of a plea[.]" As such, the statute does not appear to describe or give rise to any constitutionally protected liberty interest. *See Thompson*, 490 U.S. at 464 ("The regulations at issue here . . . stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met."); *Dix*, 963 F.2d at 1300-01.

In sum, the foundational component of pleading a claim under Section 1983, or any claim asserting deprivation of substantive or procedural due process rights, is a "careful description of the asserted right" upon which the allegations are based. *Flores*, 507 U.S. at 302; *see Crumpton*, 947 F.2d at 1420 (Section 1983 pleading must invoke "rights protected by the Constitution or created by federal statute"). The Court has not been directed to, nor does the Court discern, any state law provisions that purport to establish liberty protections for crime victims (or their kin) against police misconduct in investigatory activities prior to the commencement of criminal proceedings. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("we can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved") (citation

omitted). Because Plaintiffs have not identified a well-defined, fundamental liberty right arising

from any relevant provision of the Oregon Constitution or OCVA, Plaintiffs' substantive due

process claim cannot prevail. *Shanks*, 540 F.3d at 1087. Consequently, because Plaintiffs'

substantive liberty claim fails, so too does any concomitant claim of deprivation of procedural

due process[4] by Defendants in denying the right asserted. *Guatay Christian Fellowship*, 670

F.3d at 984; *Shinault v. Hawks*, 776 F.3d 1027, 1030 (9th Cir. 2015) ("[d]ue process protections

extend only to deprivations of protected interests").

## B. Due Process Property Right

Plaintiffs maintain that regardless of the viability of their claim of deprivation of

constitutionally protected liberty rights, they have properly pleaded an independent claim for

deprivation of their constitutionally protected property rights. Due Process property rights may

be established by state statute. "The Fourteenth Amendment's procedural protection of property

is a safeguard of the security of interests that a person has already acquired in specific benefits."

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest

in a benefit, a person clearly must have more than an abstract need or desire . . . [a person] must,

instead, have a legitimate claim of entitlement to it. *Id.* at 577. "A reasonable expectation of

entitlement is determined largely by the language of the [state] statute and the extent to which the

entitled is couched in mandatory terms." *Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*, 716

F.2d 733, 734 (9th Cir. 1983) (citation omitted).

Plaintiffs argue that ORS § 97.130 establishes such a property right, and that Defendants'

misconduct deprived them of that right. *See* FAC §§ 32, 37-39, 45(c) & (e), 46. The "right to

control disposition of remains" is codified by ORS 97.130. The statute provides guidelines for

---

[4] *See* FAC §§ 45(a), (b), (f); 46(a)-(d).

lawfully directing the disposition of one's own remains after death. ORS 97.130(1). The statute

also provides that in the absence of predetermined directives by decedent, the authority to direct

the manner of a disposition is generally delegated to family members or other individuals with

close ties to the decedent. *See* ORS 97.130(2)(f) (if no closer relation to the decedent is available

at the time of death, the person with the "next degree of kindred to the decedent" may determine

manner of disposition).

As was the case with the liberty interests Plaintiffs assert in the previous section, the

initial inquiry for the Court is to determine the contours of the property right asserted and

determine if the right is cognizable constitutionally or under federal law. *Flores*, 507 U.S. at

302; *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (courts should "focus on

the allegations in the complaint to determine how petitioner describes the constitutional right at

stake" and what conduct led to any deprivation). Plaintiffs assert that they had a constitutional

right arising from ORS 97.130 to determine the manner of Day's remains and were deprived of

this right due to Defendants' conduct, which "destroyed" his remains. Pl.'s Opp. Br. 13.

Accordingly, Plaintiffs wish the Court to recognize a due process property right in Day's remains

that was deprived by the damage sustained during the PPD's police investigation.

Plaintiffs point to two Oregon cases in support. The first involved unfortunate

circumstances where the defendant, a city-operated cemetery, mistakenly buried the remains of

the plaintiff's husband in the wrong plot. *Hovis v. City of Burns*, 243 Or 607, 608-09 (1966).

Eventually realizing the error, the defendant disinterred the remains and moved them to the

proper burial plot without asking permission or providing notice to the plaintiff. *Id.* The Oregon

Supreme Court upheld a jury verdict in favor of the plaintiff, finding that although Oregon

statutes including ORS 97.130 "bestow[ed] no rights upon [plaintiff]," she retained common law

rights to recover in tort for the mental anguish she suffered. *Hovis*, 243 Or at 611-12

(independent of statute, a [common law] right exists protecting a surviving spouse from "mental

anguish caused by the unauthorized or negligent handling of the deceased").

The second case also involved the burial of remains in the wrong gravesite. *Burrough v.*

*Twin Oaks Memorial Garden, Inc.*, 110 Or App 325 (1991). There, the decedent and his wife

had purchased a gravesite, but prior to the decedent's death, another man's remains was interred

there by mistake. *Burrough*, 110 Or App at 327. The defendant realized the mistake and opted

to bury the decedent in the other man's plot before providing notice to or obtaining permission

from the decedent's wife. *Id.* The Oregon Court of Appeals determined that because the

defendant was a private cemetery, its actions were "governed by ORS chapter 97." *Id.* at 329.

Finding that the defendant violated the plaintiff's "right to control the disposition of the remains

of a deceased person" under ORS 97.130(1), the court upheld the jury verdict awarding damages

to the plaintiff for violation of the statute. *Id.*

While the facts in these cases both suggest some degree of a right to direct the disposition

of a decedent by family members, neither case contemplates any constitutional due process right.

The *Hovis* court determined that as a municipality-run cemetery, ORS 97.130 simply did not

apply based on the text of other provisions in ORS Chapter 97, but allowed damages based in

common law. *Hovis*, 243 Or at 612. In contrast, the *Burrough* court determined that because the

defendant cemetery was a private entity, ORS 97.130 applied, and allowed damages for the

violation of state law. *Burrough*, 110 Or App at 329. Neither case determined that the

respective plaintiffs had been deprived of property rights cognizable under the U.S. Constitution

or federal law. Nor did either court recognize any property right "arising" from ORS 97.130. To

the contrary, the *Hovis* court reasoned that the statute "bestow[ed] no rights" upon the plaintiff.

*Hovis*, 243 Or at 611-12. Similarly, the *Burroughs* court's holding was limited to liability for violation of the statute, which is not cognizable in a Section 1983 claim. *Burrough*, 110 Or App at 329; *see Sweaney*, 119 F.3d at 1391. Indeed, both cases stand for the proposition that any rights protected by ORS 97.130 does not extend to rights against any entity other than a private cemetery business. Further, Plaintiffs' do not contend the property rights they assert have a basis in common law, let alone that such a common-law right is enforceable under Section 1983. As such, it is unclear how the cases advance Plaintiffs' federal claim.

Moreover, *Hovis* and *Burrough* suggest that any property right that ORS 97.130 protects is limited to the context of cemeteries and other entities in the business of the disposition of human remains, rather than police investigations. *See Sabow v. U.S.*, 93 F.3d 1445, 1458 (9th Cir. 1996) ("the handling of an individual's remains during an investigation into his death [is] different from mortuary services"). The statutory scheme of ORS Chapter 97 supports such an interpretation: ORS 97.020 provides that ORS 97.130 "relat[es] to private cemeteries," to the exclusion of public entities. ORS 97.020(1); *see Burrough*, 110 Or App at 328-29 (discussing *Hovis* and ORS 97.130); *see also* ORS 97.120 ("A cemetery authority shall deposit or dispose of human remains as provided by . . . ORS 97.110 to 97.450."). It does not appear any property right based on ORS 97.130 extends beyond the context of matters involving the rights and duties of private cemetery businesses. Plaintiffs' provide no support in law or fact that suggests otherwise. As Plaintiffs observe, "[t]he inquiry is whether or not there is a clear basis for the property right in state law." Pl.'s Br. 12-13. Plaintiffs have not demonstrated that a clear basis exists for property rights beyond the scope of ORS 97.130. While the Court can understand Plaintiffs' dissatisfaction with the police investigation at issue here and the damage to Day's remains, "more than an abstract need or desire" is required to establish the property right they

wish the Court to enforce. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Absent a clearly established property right beyond the limited context of ORS 97.130, there cannot be any deprivation of constitutional due process.

Additionally, the Court agrees with Defendant's position that even assuming Oregon law gives rise to some quasi-property interest, the ambiguities of such a right shields Defendants by virtue of qualified immunity. *See* Defendants' Reply 9 (#25). Such immunity extends to government officials where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the reasons discussed above, the property rights Plaintiffs assert certainly are not well-established as extending beyond breaches of duties provided by cemetery services. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"). The Court cannot discern how Defendants would or should have known that the police misconduct alleged might create liability emanating from a statute that, on its face and as interpreted by Oregon courts, limits its protections to misconduct by private cemetery businesses. Although Plaintiffs argue that it is premature for the Court to consider qualified immunity without "look[ing] at the evidence on the record," such a factual inquiry is not necessary where the right alleged is not clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009). Because Plaintiffs have not demonstrated a constitutional property right, let alone a right that is clearly established, no further inquiry is appropriate.

Finally, the Court agrees that the alleged misconduct by PPD is not cognizable under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). ([A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when

execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible."). *Id.* at 694. Plaintiffs argue that the PPD "failed to train, [or] establish policies and procedures for missing person investigations[,]" which allowed for Price's alleged misconduct. Pl.'s Opp. Br. 15. But, "[a]bsent a formal governmental policy, [Plaintiffs] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity . . . the custom must be so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations and internal quotation marks omitted). Plaintiffs have not pleaded that Price's actions reflected a longstanding practice or custom which constitutes the standard operating procedure of the PPD. *See* FAC § 46. As such, they have not properly stated a claim against the PPD. *See Trevino*, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (citation omitted).

### C. Remaining State Law Claims

For the reasons discussed in the preceding sections, Plaintiffs have not stated a legally cognizable claim under Section 1983, so the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). It is therefore inappropriate for the Court to take up Plaintiffs' remaining claims which arise under state law. Accordingly, the Court should decline to assert supplemental jurisdiction over the remaining claims pursuant to Fed. R. Civ. P. 12(b)(1).

### RECOMMENDATION

For the reasons provided above, defendant's motions to dismiss (#16) should be GRANTED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____8th_____ day of January 2021.

MARK D. CLARKE
United States Magistrate Judge